## GRAHAM *v.* LAMB.

1. DEEDS—PARENT AND CHILD—CANCELLATION—RIGHTS OF MORT-
   GAGEE—CONSTRUCTIVE NOTICE.

   Knowledge on the part of a wife that her husband, previously
   married, procured from his daughter, without any considera-
   tion, shortly after the latter became of age, a quitclaim
   deed of property which she had inherited from her mother,
   is sufficient to put her on inquiry, before accepting a mort-
   gage upon the property, as to the character of the transaction,
   and will subject her, as mortgagee, to the right of the
   daughter to have the deed set aside on showing that she had
   no knowledge that the title to the property had descended
   to her on her mother's death.

2. HUSBAND AND WIFE—MORTGAGE TO SECURE HUSBAND'S DEBT
   —MARSHALING SECURITIES—HOMESTEAD.

   A wife, by including her separate property in a mortgage,
   together with the property of her husband, to secure her hus-
   band's debt, does not make it the primary fund out of which
   the debt should be satisfied, though his property included in
   the mortgage constituted the homestead.

Appeal from St. Clair; Vance, J.  Submitted June 7,
1899.  Decided July 5, 1899.

Bill by Olive L. Graham against Hosea and Eugenia
Lamb, and Ellis B., Daniel, and Susan B. Clark, execu-
tors of the last will and testament of Ira M. Clark, de-
ceased, to set aside a deed.  From the decree rendered,
complainant appeals.  Modified.

*Atkinson, Wolcott & Moore*, for complainant.

*Thomas Wellman*, for defendants Lamb.

*John C. Graham*, for defendants Clark.

MONTGOMERY, J.  This is a bill to set aside a deed.
The circuit judge found the following facts:

"On January 4, 1873, Hosea Lamb owned in fee the
W. ½ of the N. E. ¼ of section 2, township 8 N., of range

16 E., St. Clair county, Mich. On that date he quit-claimed to his wife, Mary A. Lamb, the S. $\frac{1}{2}$ of the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of said section 2, township 8 N., of range 16 E., for the stated consideration of $400, but no consid-eration was paid in fact. Hosea Lamb was indebted at this time on two notes given to one Lewis Potts, and, be-lieving the indebtedness unjust, made this deed to his wife to avoid their payment. At this time he lived on, and made his home on, the north 40 acres. These Potts notes came to the hands of one William Stevenson, who recov-ered a judgment thereon against Hosea Lamb in this court in June, 1873, and execution upon this judgment was levied upon the 80 acres above described, about November 25, 1873. December 6, 1873, Hosea Lamb and his wife, Mary A., mortgaged the whole 80 acres to Robert J. Arnott for $202 to pay the Stevenson judgment. On February 12, 1878, Hosea and Mary A. Lamb, his wife, mortgaged the same 80 acres to Ira M. Clark for $400, and the proceeds of this mortgage, at least in part, were used to pay up the Arnott mortgage. Ira M. Clark died, and the defendants Ellis B., Susan B., and Daniel Clark are executors of the estate of Ira M. Clark, deceased. About May, 1885, Mary A., wife of Hosea Lamb, died, leaving the complainant, Olive Lamb, her sole heir at law, and owner in fee, subject to the Clark mortgage, of the S. $\frac{1}{2}$ of the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of said section 2, township 8 N., range 16 E., being the land in controversy. August 25, 1885, Olive Lamb quitclaimed the 40 acres last above described to her father, Hosea Lamb. No consideration was paid for this deed, and it recites that it was made on account of love and affection. At the time of giving this deed, Olive Lamb did not know that her mother owned this 40 acres at the time of her death, and did not know that she became the owner thereof on the death of her mother. She was then shortly past her majority, and was living with her father, and keeping house for him, on the 80 acres where she had lived from childhood.

"It is my conclusion that Olive Lamb was not advised or informed of her real interest in this 40 acres, either by her father or any one else, at the time she signed the quitclaim deed, and she did not know the nature of the business she transacted, or the rights or interests she had which were being transferred.

"About one and a half years after the death of his wife, Mary A. Lamb, Hosea Lamb married his present

wife, Eugenia Lamb, one of the defendants. Of this
marriage there is one child, now about 6 years old. Eu-
genia Lamb, shortly after her marriage with Hosea Lamb,
loaned him some money, and gave him some cattle to
double, amounting in all to a considerable sum of money.
Hosea Lamb had been interested in a store at Jeddo, and
that business failed in 1895, involving him in debt.
When Eugenia, his second wife, learned of his financial
condition, she asked him for security for the money and
property she had loaned him after their marriage. At the
time he received this money and property from her he
promised to give her security for their repayment when
she requested it. On June 17, 1895, Hosea and his
wife, Eugenia, went to an attorney, M. N. Mugan, who
figured up the amount due from Hosea to Eugenia, and
on that day Hosea gave his wife, Eugenia, a real-estate
mortgage for $800 on the S. W. ¼ of the N. E. ¼ of sec-
tion 2, township 8 N., range 16 E., the same premises
Olive Lamb deeded to her father, August 25, 1885, and at
the same time secured the indebtedness by a chattel mort-
gage on all, or nearly all, of his personal property. At the
time Eugenia Lamb took this mortgage for $800, on June
17, 1895, she had no knowledge that Olive Lamb Gra-
ham questioned the validity of the deed she made to her
father, August 25, 1885, or that it was open to question."

The conclusion of the circuit judge was that complain-
ant was entitled to have the deed made by her set aside as
against Hosea Lamb, but that the equities of Eugenia
Lamb were superior to those of complainant, and, as to the
Clark mortgage, there were no equities which would justify
a direction that the homestead should be sold first.

We are not able to agree with the conclusion of the cir-
cuit judge as to either of these questions. Mrs. Eugenia
Lamb testified as to her knowledge of complainant's claim
to the land as follows:

"Had you any knowledge of her having any interest
in this property at the time you married Mr. Lamb?
"A. No, sir.
"Q. And after and before you took this mortgage?
"A. Well, I just heard a while after. Mr. Lamb
never spoke to me about it at all until since the trouble
commenced to come. I had heard from different parties

around that there had been something of that kind, but never from Mrs. Graham nor from Mr. Lamb. It came through other parties.

"*Q.* Was there any intention on your part, when you took this mortgage, to defrand Olive out of her rights?

"*A.* No, sir; not one dollar.

"*Q.* Now, you say you heard of this, or heard something about it, from other parties. What was it you heard?

"*A.* Mrs. Methven told me concerning this deed. She said about Olive's mother having the deed, and how Mr. Lamb had got Olive to deed it back to him; and Mr. Graham said that, if he had got hold of Olive before she gave the deed, he would never have let her give the deed back to her father.

"*Q.* Where is Mrs. Methven now?

"*A.* She is dead."

We cannot escape the conclusion that, when Mrs. Eugenia Lamb took her mortgage, she had enough knowledge to put her on inquiry.

As to the Clark mortgage: The first Mrs. Lamb, by including her separate property in a mortgage to secure her husband's debt, did not make that the primary fund out of which the debt should be satisfied. We think the decree should have provided that the amount of the mortgage should, in case of foreclosure, be satisfied by a sale of complainant's lands only in the event that the lands owned by defendant Hosea are insufficient to satisfy the mortgage. The decree will be modified accordingly, and the mortgage of Eugenia Lamb will be declared not to be a lien upon the land in question. Complainant will recover costs against Hosea Lamb and Eugenia Lamb.

The other Justices concurred.